125 Cal.Rptr.2d 269 (2002)
101 Cal.App.4th 1370
In re OSCAR R., a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
Oscar R., Defendant and Appellant.
No. B151004.
Court of Appeal, Second District, Division Two.
September 12, 2002.
Review Granted November 26, 2002.
*271 Gerson Simon, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Theresa A. Cochrane, and Catherine T. Okawa Kohm, Deputy Attorneys General, for Plaintiff and Respondent.
*270 ASHMANN-GERST, J.
On March 7, 2000, the voters approved an initiative measure designated as Proposition 21, which became effective on March 8, 2000. In relevant part, Proposition 21 amended Welfare and Institutions Code section 777 to reduce the burden of proof and permit the use of hearsay in hearings to modify dispositional orders to impose more restrictive custody for minors previously adjudicated as wards of the court. (Welf. & Inst.Code § 777, subd. (c) ["The facts alleged in the notice shall be established by a preponderance of the evidence at a hearing to change, modify, or set aside a previous order. The court may admit and consider reliable hearsay evidence ..."]) Prior to March 8, 2000, allegations to modify a prior dispositional order needed to established beyond a reasonable doubt. (In re Arthur N. (1976) 16 Cal.3d 226, 239-240, 127 Cal.Rptr. 641, 545 P.2d 1345.) Likewise, under prior case law, hearsay not subject to a statutory exception was inadmissible. (In re Antonio A. (1990) 225 Cal.App.3d 700, 706, 275 Cal. Rptr. 482.)
Appellant Oscar R. appeals the juvenile court's revocation of his probation and sentence to the California Youth Authority (CYA). He contends that the juvenile court erred in applying amended Welfare and Institutions Code section 777 (hereafter *272 amended section 777), which was enacted before appellant violated his probation but after he originally was sentenced.[1] Appellant asserts three arguments in support of his appeal: (1) application of amended section 777 violated the ex post facto clauses of the United States and California Constitutions; (2) the juvenile court erred in admitting hearsay testimony; and (3) amended section 777 violates California's single subject rule. We find that the juvenile court did not err. When a juvenile who, after the enactment of amended section 777, engages in conduct alleged to violate the terms of his probation, application of amended section 777 to the probation revocation hearing does not violate the ex post facto clauses of the United States and California Constitutions, even though the original underlying offense occurred prior to the enactment of the statute. Furthermore, the juvenile court did not err in allowing reliable hearsay testimony at the probation revocation hearing. Finally, in light of the recent California Supreme Court decision (Manduley v. Superior Court (2002) 27 Cal.4th 537, 582, modified 27 Cal.4th 887a, 117 Cal.Rptr.2d 168, 41 P.3d 3, (Manduley)), we conclude that Proposition 21 does not violate the single subject rule.

FACTUAL AND PROCEDURAL BACKGROUND
In a petition filed on May 18, 1998, appellant was charged with three counts of robbery and one count of possession of a firearm by a minor. The petition was sustained as to two robbery counts and the firearm count, and the juvenile court ordered appellant to be placed in the camp community placement program (camp) for a period not to exceed 16 years. Additionally, as a condition of his probation, appellant was ordered to avoid contact with the robbery victims, including Ivan L. Appellant spent 45 weeks in camp and was released on June 18,1999.
In a petition filed November 5, 1999, appellant was charged with one count of public intoxication. The petition was sustained and appellant again was placed in camp for 90 days, with an order that he could not be confined for more than 16 years. The prior probation conditions remained in effect.
The petition in the instant case was filed on March 1, 2001, charging appellant again with public intoxication. At a hearing on April 2, 2001, appellant admitted the charge of public intoxication and the juvenile court found it to be true beyond a reasonable doubt, and appellant was sentenced to two months at CYA. Thereafter, at defense counsel's request, the matter was continued for a contested disposition and probation violation hearing.
On April 30, 2001, the juvenile court held the hearing on the contested disposition and on the allegation that appellant violated the terms of his probation by contacting Ivan L. At the hearing, over appellant's hearsay objection, the juvenile court allowed appellant's probation officer, Jerome Spurlin (Spurlin), to testify regarding the allegation that appellant had been harassing Ivan L. Spurlin testified that on February 14, 2001, he spoke with Ivan L. and Ivan L.'s mother. They informed Spurlin that on February 2, 2001, appellant had been looking for Ivan L. "on the campus." Appellant later called Ivan L. and asked him "do he know who he was" and told him "to watch his back." Ivan L. was very serious, concerned, and sincere. In fact, following appellant's telephone call, Ivan L. withdrew from school and began a *273 "home study course" because he was afraid of appellant. In a March 28, 2001, preplea report, Spurlin recommended that the alleged offenses be considered a probation violation and that appellant be returned to camp for the maximum amount of time.
After hearing all of the evidence, the juvenile court stated the following: "Now, we have [appellant] here on a [public intoxication] offense, which is a minor offense .... Now, having read [the doctor's] report, I do think that a placement in an alcohol treatment program would be appropriate. But then also looking at the probation violation, the fact that [appellant] continues to be in violation of this court order about contacting the victims as indicated in the report and presented by Mr. Spurlin, is a very, very serious concern to me. Because we have a young victim who is being threatened for coming in here and telling us what happened, and I find that to be very, very serious. [¶] I find that the [CYA] would be the appropriate disposition; therefore, I find that the previous order of camp ... is terminated, and that was made on October 4th, 2000, and I find that a more restrictive placement is necessary and I am sentencing him to the [CYA]. Not on the alcohol offense but rather on a probation violation as to the original offense."
On May 1, 2001, appellant timely filed a notice of appeal from the juvenile court's order.

DISCUSSION

I. The Juvenile Court's Application of Amended Section 777 at the Probation Revocation Hearing Did Not Violate the Ex Post Facto Clauses of the United States and California Constitutions

"The heart of the Ex Post Facto Clause, U.S. Const., Art. I, § 9, bars application of a law `that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed ... .' Calder v. Bull, 3 U.S. 386 (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (emphasis deleted). To prevail on this sort of ex post facto claim, [appellant] must show both that the law he challenges operates retroactively (that it applies to conduct completed before its enactment) and that it raises the penalty from whatever the law provided when he acted." (Johnson v. United States (2000) 529 U.S. 694, 699, 120 S.Ct. 1795, 146 L.Ed.2d 727 (Johnson); see also Cal. Const., art. I, § 9; People v. Castellanos (1999) 21 Cal.4th 785, 790, 88 Cal.Rptr.2d 346, 982 P.2d 211 [holding that the ex post facto clause in the California Constitution is analyzed in the same manner as its federal counterpart].) The ban against ex post facto laws prohibits four general categories of laws: (1) a law that makes criminal an action that was not criminal when done, (2) a law that aggravates a crime or makes it greater than it was when it was committed, (3) a law that increases the punishment for a crime after it was committed, and (4) a law that alters the legal rules of evidence and requires less or different evidence to convict the offender of a crime than the law required at the time the crime was committed. (Carmell v. Texas (2000) 529 U.S. 513, 521-522, 120 S.Ct. 1620, 146 L.Ed.2d 577 (Carmell).) It is well recognized that ex post facto protections are applicable to juvenile proceedings. (In re Melvin J. (2000) 81 Cal.App.4th 742, 758-759, 96 Cal. Rptr.2d 917 (Melvin J.).)
Appellant argues that application of amended section 777 to his probation revocation hearing violated the fourth category of ex post facto laws. Relying heavily upon Melvin J., he contends that his probation violation relates back to the date of his original offense, which was committed prior to the enactment of amended section *274 777. It follows, appellant argues, that amended section 777 should not have been applied at his probation revocation hearing. We disagree.
Preliminarily, we note that Melvin J. factually is distinguishable from the instant case. In Melvin J., all relevant events occurred prior to the enactment of amended section 777: the juvenile committed the underlying offense, was declared a ward of the court, was placed on probation, committed the offense that violated probation, and had his probation revoked. (Melvin J., supra, 81 Cal.App.4th at p. 745, 96 Cal.Rptr.2d 917.) Here, although appellant committed the underlying offense and was placed on probation before amended section 777 was enacted, he violated his probation one year after the statute took effect. This distinction is critical: in Melvin J., the minor's conduct constituting the probation violation occurred before the effective date of amended section 777. Under Carmell, amended section 777 appears to have changed the legal consequences of that conduct by reducing the amount of evidence needed to revoke a juvenile's probation. (Carmell, supra, 529 U.S. at p. 530, 120 S.Ct. 1620.) Accordingly, ex post facto principles would bar the application of amended section 777 on the facts presented in Melvin J. In contrast, in the instant case, appellant violated his probation after amended section 777 took effect. The amount and type of evidence needed to revoke appellant's probation for his conduct which occurred after March 8, 2000, did not change, thereby not invoking ex post facto concerns.
Setting the factual differences of Melvin J. aside, we find the reasoning of Melvin J. unpersuasive. Citing Johnson, the Melvin J. court concluded that the date of the original offense was the pivotal date for its ex post facto analysis and used that date instead of the date of the probation violation conduct. It based this conclusion upon Johnson's language that "post revocation sanctions relate to the original offense for ex post facto purposes, and not to the date of the conduct alleged to constitute the basis for the revocation." (Melvin J., supra, 81 Cal.App.4th at p. 757, fn. 6, 96 Cal.Rptr.2d 917.) We respectfully disagree with this analysis. Although the Johnson court stated that it was attributing "post revocation penalties to the original conviction" (Johnson, supra, 529 U.S. at p. 701, 120 S.Ct. 1795), it did not evaluate which law would apply to determine whether probation should be revoked. In other words, Johnson only addressed changes in penalties available if the predicate decision to revoke probation were made; it did not address statutory changes to the standards or procedures for determining whether probation should be revoked. (People v. Callejas (2000) 85 Cal.App.4th 667, 675-678, 102 Cal.Rptr.2d 363 [citing Johnson for the proposition that a postrevocation penalty relates to the original conviction rather than the new conduct violating the terms of parole].) So long as amended section 777 does not expand the potential penalties for a probation violation, no ex post facto violation occurred.
Applying Johnson to the facts herein, we find that the juvenile court properly applied amended section 777 at appellant's probation revocation hearing. Amended section 777 did not give the juvenile court an expanded list of potential sanctions or penalties for appellant's probation violation; the juvenile court's options, including revoking appellant's probation and sending him to CYA, were the same as they were before amended section 777 was enacted. The only change was in procedure, namely a reduced burden of proof and the consideration of reliable hearsay.
People v. Mills (1992) 6 Cal.App.4th 1278, 8 Cal.Rptr.2d 310 is instructive. In *275 Mills, the defendant was convicted of a felony in 1981. (Id. at p. 1282, 8 Cal. Rptr.2d 310.) At that time, the law prohibited ex-felons from possessing a concealable firearm. In 1989, the law was changed to prohibit ex-felons from possessing any type of firearm. In 1990, the defendant was found in possession of a shotgun and was prosecuted under the new statute. (Ibid.) The defendant argued that the new statute could not be applied to him because it changed the legal consequences of his original offense. (Id. at pp. 1283-1284, 8 Cal.Rptr.2d 310.) The Mills court disagreed, pointing out that the new statute only applied to events occurring after its effective date and because the defendant possessed the shotgun six months after the statute became effective, the statute was not retroactive. (Id. at pp. 1285-1286, 8 Cal.Rptr.2d 310.)
Similarly, in the instant case, amended section 777 applies only to events occurring after its effective date. Here, appellant violated his probation after amended section 777 became effective. Since amended section 777 does not retroactively alter the legal consequences of conduct completed prior to its effective date, application of the amended statute to appellant did not violate the prohibition against ex post facto laws.
Carmell supports our conclusion herein. In Carmell, the Supreme Court "was presented with a Texas statute that originally required corroboration of a victim of a sexual offense if the victim was 14 years old or older at the time of the offense. The statute was amended after the date of the alleged offense to require corroboration only where the victim was 18 years old or older at the time of the offense. The victim in Carmell was over 14 but under 18 at the time of some of the offenses, and there was no corroboration as to those alleged offenses. The majority found that the effect of the amendment was to reduce the amount of evidence needed for a finding of guilt," thereby constituting an ex post facto violation. (Melvin J., supra, 81 Cal.App.4th at p. 758, 96 Cal.Rptr.2d 917.) However, not all of the defendant's 15 convictions were implicated by the amended statute. Specifically, the Supreme Court stated that five of the counts "were committed after the new Texas law went into effect, so there could be no ex post facto claim as to those convictions." (Carmell, supra, 529 U.S. at pp. 519-520, 120 S.Ct. 1620.) In other words, the Supreme Court acknowledged that insofar as the changed standards were applied to offenses based upon conduct occurring after the statutory amendment became effective, there could be no ex post facto violation.
For the same reasons, no ex post facto problems arise here. Although amended section 777 changes the amount and type of evidence necessary to revoke a minor's probation, that procedure was well in place when appellant violated one of the conditions of his probation. Therefore, applying these new standards to wrongful behavior committed after the enactment of amended section 777 does not violate the ex post facto clauses of the United States and California Constitutions.

II. The Juvenile Court Did Not Abuse Its Discretion in Allowing Reliable Hearsay Testimony

Appellant argues that even if amended section 777 applied to his probation revocation hearing, the juvenile court erred in admitting Spurlin's testimony regarding Ivan L. because it was unreliable hearsay. Subdivision (c) of amended section 777 provides, in relevant part, "[t]he court may admit and consider reliable hearsay evidence at the hearing to the same extent that such evidence would be admissible in an adult probation revocation *276 hearing, pursuant to the decision in People v. Brown [(1989)] 215 Cal.App.3d [452, 263 Cal.Rptr. 391] ... and any other relevant provision of law." (Italics added.) In an adult probation revocation hearing, reliable hearsay evidence is admissible, so long as it "bears a substantial degree of trustworthiness," namely if "there are sufficient `indicia of reliability."' (People v. Brown, supra, 215 Cal.App.3d at p. 454, 263 Cal.Rptr. 391.) Whether hearsay evidence is trustworthy "rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." (Id. at p. 455, 263 Cal.Rptr. 391.)
Whether hearsay evidence is reliable is not the end of the analysis. We interpret the phrase "any other relevant provision of law" in amended section 777, subdivision (c) to encompass decisions by the Supreme Courts of the United States and of the State of California. In that regard, we have considered several Supreme Court decisions which address the circumstances in which hearsay testimony would be admissible at adult probation revocation hearings, including People v. Maki (1985) 39 Cal.3d 707, 217 Cal.Rptr. 676, 704 P.2d 743, People v. Winson (1981) 29 Cal.3d 711, 175 Cal.Rptr. 621, 631 P.2d 55, and People v. Arreola (1994) 7 Cal.4th 1144, 31 Cal.Rptr.2d 631, 875 P.2d 736. With respect to testimonial evidence, our Supreme Court has reiterated the well-established principle that "the need for confrontation is particularly important" and we cannot dispense lightly with the defendant's right at a probation hearing to confront and cross-examine witnesses. (Id. at pp. 1158, 1159, 31 Cal.Rptr.2d 631, 875 P.2d 736.) Accordingly, under Arreola and for the reasons set forth in the concurrently filed case of People v. Kentron D. (2002) 101 Cal.App.4th 1381, 125 Cal. Rptr.2d 260, we find that reliable testimonial hearsay evidence may be admitted only for good cause. "The broad standard of `good cause' is met (1) when the declarant is `unavailable' under the traditional hearsay standard (see Evid.Code, § 240), (2) when the declarant, although not legally unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, mental or emotional harm) to the declarant." (Arreola, at pp. 1159-1160, 31 Cal.Rptr.2d 631, 875 P.2d 736.)
Here, the juvenile court properly admitted and considered the hearsay testimony. Ivan L. informed Spurlin that appellant was "look[ing] for" Ivan L. at school. Appellant telephoned Ivan L. and threatened him, telling him to "watch his back." Ivan L. was so afraid of appellant that he withdrew from school and enrolled in a home study course. As the juvenile court found, this testimony regarding Ivan L.'s statements was reliable. Spurlin described Ivan L.'s demeanor as serious, concerned, and sincere when discussing appellant's actions. The reliability of Spurlin's testimony was further supported by his written report, in which he documented the date he had arranged to meet Ivan L. and his mother.
Moreover, as set forth above, the People demonstrated that Ivan L.'s presence at the probation revocation hearing would have posed a risk of harm to him. Accordingly, although the juvenile court did not conduct a good cause hearing, we find that that standard has been met herein.

III. Amended Proposition 21 Does Not Violate the Single Subject Rule

Appellant contends that Proposition 21 violates California's single subject rule. (Cal. Const.Art.II, § 8, subd. (d).) In Manduley, supra, 27 Cal.4th 537, 117 Cal. *277 Rptr.2d 168, 41 P.3d 3, our Supreme Court held that Proposition 21 satisfies the requirements of that rule.

DISPOSITION
The order committing appellant to the CYA is affirmed.
We concur: BOREN, P.J, and NOTT, J.
NOTES
[1] This issue currently is pending before the California Supreme Court in John L. v. Superior Court, review granted July 18, 2001, S098158.