14 Cal.Rptr.3d 261 (2004)
91 P.3d 205
33 Cal.4th 158
JOHN L., Petitioner,
v.
The SUPERIOR COURT Of San Diego County, Respondent;
The People, Real Party in Interest.
The People, Petitioner,
v.
The Superior Court of San Diego County, Respondent;
Matthew F., Real Party in Interest.
The People, Petitioner,
v.
The Superior Court of San Diego County, Respondent;
Jonathan G., Real Party in Interest.
No. S098158.
Supreme Court of California.
June 17, 2004.
*262 Steven J. Carroll, Public Defender, Matthew Braner, Gary Nichols and Jo Pastore, Deputy Public Defenders, for Petitioner John L. and for Real Parties in Interest Matthew F. and Jonathan G.
Paul J. Pfingst and Bonnie M. Dumanis, District Attorneys, Thomas F. McArdle and Peter J. Cross, Deputy District Attorneys, for Petitioner and for Real Party in Interest the People.
No appearance for Respondent.
BAXTER, J.
Effective March 8, 2000, the Gang Violence and Juvenile Crime Prevention Initiative (Prop. 21, Primary Elec. (Mar. 7, 2000)) (Proposition 21) amended Welfare and Institutions Code section 777.[1] Section 777, subdivision (a)(2) (section 777(a)(2)) establishes the juvenile court procedure for finding probation violations and modifying prior dispositions when new misconduct is committed by those on probation *263 for crimes previously adjudicated under section 602.
As we recently explained in In re Eddie M. (2003) 31 Cal.4th 480, 494-502, 3 Cal.Rptr.3d 119, 73 P.3d 1115 (Eddie M.), former section 777 could be used to find a new criminal violation by one already a probationer under section 602, and thus to increase the person's maximum term of juvenile confinement. Accordingly, case law established that the new misconduct adjudicated under former section 777 must be proved beyond a reasonable doubt by evidence competent in a criminal trial. (In re Arthur N. (1976) 16 Cal.3d 226, 234-240, 127 Cal.Rptr. 641, 545 P.2d 1345 (Arthur N.).)
However, Proposition 21 prevents use of section 777(a)(2) to produce new criminal adjudications and to thereby increase the maximum term of confinement for the original section 602 offense. Even if criminal in fact, new misconduct may be treated, under section 777(a)(2), only as a probation violation. If a violation is found, the violator may, at most, receive a more restrictive juvenile placement within the original maximum term.
Consistent with section 777's changed role, and in an effort to streamline proceedings under this statute, Proposition 21 reduced the standard of proof in such proceedings from beyond a reasonable doubt to a preponderance of the evidence. (§ 777, subd. (c) (section 777(c)).) Certain evidentiary changes also were made. For example, Proposition 21 allows the use of reliable hearsay evidence in section 777(a)(2) proceedings, insofar as such evidence is admissible in adult probation revocation proceedings, to prove juvenile probation violations. (§ 777(c); see In re Antonio A. (1990) 225 Cal.App.3d 700, 703-706, 275 Cal.Rptr. 482.)
In Eddie M., supra, 31 Cal.4th 480, 3 Cal.Rptr.3d 119, 73 P.3d 1115, we unanimously held that the state and federal due process clauses permit use of the "preponderance" standard in all section 777(a)(2) proceedings covered by Proposition 21. As we explained, contrary to what statutory law provided when Arthur N., supra, 16 Cal.3d 226, 127 Cal.Rptr. 641, 545 P.2d 1345, adopted the old reasonable-doubt rule, juvenile probation violation proceedings now "differ from criminal prosecutions in purpose, operation, and effect." (Eddie M., supra, 31 Cal.4th at p. 486, 3 Cal.Rptr.3d 119, 73 P.3d 1115.)
Here, we address another constitutional challenge to section 777. Petitioners committed their section 602 offenses before the adoption of Proposition 21. However, after Proposition 21's effective date, they committed alleged probation violations that the People seek to adjudicate under the amended version of section 777. Petitioners claim that, as applied to them, the preponderance and evidentiary provisions of new section 777(c) violate state and federal guarantees against ex post facto laws. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.) Petitioners equate section 777(a)(2) proceedings with criminal trials, in which the "quantum" and standard of proof cannot be retroactively eased. Petitioners also claim that Proposition 21's rules for proving probation violations retroactively increase the "punishment" for their section 602 crimes.
The juvenile court issued conflicting rulings on the ex post facto defenses in separate hearings below. In a consolidated writ proceeding, the Court of Appeal found no ex post facto bar to applying Proposition 21 in this case.
We agree with the Court of Appeal's conclusion that no ex post facto problem is presented. Even if retroactivity is measured from the date of the original section 602 crimes, as petitioners necessarily *264 claim, no ex post facto law is at stake. First, Proposition 21's amendments to section 777 did not affect the standards of proof or evidence used to adjudicate those crimes. There is no authority for extending the ex post facto clause's evidentiary concerns beyond the criminal trial itself to subsequent probation violation proceedings in which nothing akin to a criminal conviction is produced. Second, for reasons set forth at length in Eddie M., supra, 31 Cal.4th 480, 3 Cal.Rptr.3d 119, 73 P.3d 1115, the challenged amendments do not inflict new or increased punishment, in the ex post facto sense, for the original section 602 crimes. While Proposition 21's new procedural rules may increase the chance that a probation violation will be found, there has been no material adverse change in the standards used to modify the original disposition, or in the choice of placements available as a result. Therefore, we will affirm the judgment of the Court of Appeal.

I. FACTS
Petitioners underwent separate proceedings in juvenile court. The district attorney filed section 602 petitions accusing each petitioner of violating one or more laws "defining crime," while under the age of 18. (§ 602, subd. (a).) The offenses occurred before Proposition 21 took effect on March 8, 2000, as discussed further below.
At the jurisdictional phase of the section 602 proceedings, petitioners each admitted at least one alleged offense. The juvenile court found such crimes true beyond a reasonable doubt (§ 701), and dismissed the remaining counts.
At the dispositional phase of the section 602 proceedings, petitioners were declared wards of the court, and were placed in the custody and control of the probation department on various conditions. (See §§ 725, 726, 727, 730.) All three dispositional orders specified a maximum period of physical confinement for the section 602 crimes sustained against petitioners. (§ 726, subd. (c).)
As a result, John L. entered the Youth Correctional Center on the condition that he follow all rules and instructions. Matthew F. was committed to a residential program and ordered to undergo treatment for his sex crime. Jonathan G. received at-home supervision on the condition that he remain drug free and take random drug tests.
The probation department later learned that petitioners violated probation. It appears the Youth Correctional Center ejected John L. because he breached disciplinary rules and orders by provoking racial unrest and harassing Black inmates. Matthew F.'s treatment program was reportedly ended because he refused to participate. Jonathan G. apparently tested positive for drug use several times.
The district attorney filed motions alleging probation violations on the foregoing grounds, and seeking more restrictive placements under section 777(a)(2), as amended by Proposition 21. The alleged probation violations occurred, and the section 777 proceedings began, after Proposition 21's March 8, 2000 effective date.
In each case, petitioners moved both orally and in writing for a ruling applying the former version of section 777, in effect when they committed their section 602 crimes. All three petitioners argued against ex post facto application of Proposition 21's new standards of proof and evidence.
In John L.'s case, the juvenile court rejected the ex post facto claim and denied the motion. As to Matthew F. and Jonathan G., another juvenile court granted *265 their motions, and exempted their section 777 proceedings from Proposition 21.
The Court of Appeal summarily denied John L.'s petition for mandate, and he sought review in this court. We granted review and transferred the matter to the Court of Appeal with directions to vacate its denial of mandate and to issue an order to show cause. Meanwhile, the People, represented by the district attorney, sought writs of mandate in the Court of Appeal to overturn the rulings granting both Matthew F. and Jonathan G. relief on ex post facto grounds. The Court of Appeal issued orders to show cause in the latter cases, and consolidated them with John L.'s mandate proceeding.
The Court of Appeal concluded that insofar as the challenged amendments are used to litigate probation violations committed after Proposition 21's effective date, "an essential element necessary to an ex post facto violation appears to be absent; new section 777 does not appear to operate retroactively by applying to conduct completed before its enactment." Rejecting a contrary assumption in In re Melvin J. (2000) 81 Cal.App.4th 742, 96 Cal.Rptr.2d 917, the Court of Appeal declined to use the section 602 offenses as the "pivotal date" for its constitutional analysis. (See post, fn. 7.) Hence, the panel issued writs of mandate directing the juvenile court to vacate its orders concerning Matthew F. and Jonathan G., and to conduct their probation violation hearings under section 777, as amended by Proposition 21. Mandate was denied in the John L. case, where the juvenile court had applied Proposition 21.
We granted petitioners' joint request for review.

II. DISCUSSION

A. Intended Scope of Amended Statute
Both sides had assumed throughout these proceedings, including in their briefs on the merits in this court, that the challenged amendments were intended to affect any section 777 proceeding held after the voters approved Proposition 21 on March 7, 2000. However, after we requested supplemental briefs on this threshold statutory question, petitioners argued for the first time that such provisions were not meant to apply here. Insofar as an initiative statute "takes effect the day after the election unless the measure provides otherwise" (Cal. Const., art. II, § 10, subd. (a)), petitioners suggest the operative event is the section 602 offense triggering the juvenile court's jurisdiction, not the section 777 proceeding in which Proposition 21's new rules would otherwise apply. Since their section 602 crimes occurred before March 8, 2000, petitioners insist pre-Proposition 21 law dictates how their post-Proposition 21 probation violations should be litigated.
The statutory language belies this claim. (See Robert L. v. Superior Court (2003) 30 Cal.4th 894, 900-901, 135 Cal.Rptr.2d 30, 69 P.3d 951 [general rules of statutory construction govern initiatives like Prop. 21]; People v. Birkett (1999) 21 Cal.4th 226, 231, 87 Cal.Rptr.2d 205, 980 P.2d 912 [statute's plain meaning controls].) In making procedural changes to juvenile probation violation proceedings, Proposition 21 did not amend section 777 to state that the original section 602 offense must occur on or after March 8, 2000 in order for the changes to apply. By its own terms, section 777(a)(2) broadly applies where the person is "a court ward or probationer under Section 602 in the original matter and the notice alleges a violation of a condition of probation not amounting to a crime." Section 777 also contemplates "a noticed hearing" conforming to the statute's requirements, including Proposition 21's new standard of proof and evidentiary *266 rules. (§ 777, 1st par.)[2]
The quoted language is unqualified and its meaning seems plain. Any "noticed hearing" held while Proposition 21's changes to section 777 are in effect is subject to their terms, regardless of when the section 602 offense "in the original matter" occurred. (§ 777(a)(2).) If voters had intended to limit such amendments to probationers who committed their section 602 crimes after the initiative's effective date, Proposition 21 could have so provided. (Cal. Const., art. II, § 10, subd. (a).) We would have to rewrite the statute in order to restrict its scope in this manner. (See People v. Ansell (2001) 25 Cal.4th 868, 881, 108 Cal.Rptr.2d 145, 24 P.3d 1174 (Ansell) [subjecting convicted sex offenders to new restrictions on procedure for removing civil disabilities even where qualifying crimes predated statutory change].)
The statute's purpose, as reflected in Proposition 21 ballot materials, also suggests an intent to affect the maximum number of juvenile probation violation cases as soon as possible. In general, voters expressed alarm over the recent increase in juvenile and gang-related crime, and the perceived inability of the juvenile justice system to protect the public, particularly against violent and recidivist offenders. (See Manduley v. Superior Court (2002) 27 Cal.4th 537, 574-579, 117 Cal.Rptr.2d 168, 41 P.3d 3.) Regarding changes to juvenile court procedures like section 777, ballot materials emphasized the interest in reforming less serious offenders by holding them more "`accountab[le]'" for crimes and other misconduct. (Eddie M., supra, 31 Cal.4th 480, 500, 3 Cal.Rptr.3d 119, 73 P.3d 1115.) Indeed, by making it easier to prove a probation violation alleged under section 777(a)(2), Proposition 21 ensures that new misconduct otherwise immune from either an adult criminal prosecution or a new section 602 proceeding does not escape sanction altogether. (Eddie M., supra, 31 Cal.4th at pp. 500-501, 3 Cal.Rptr.3d 119, 73 P.3d 1115.) The ballot materials convey a sense of urgency in this regard. (See id. at p. 500, 3 Cal.Rptr.3d 119, 73 P.3d 1115; Manduley v. Superior Court, supra, 27 Cal.4th at pp. 575-576, 117 Cal.Rptr.2d 168, 41 P.3d 3.)
In contrast, petitioners' approach effectively means that the section 777 amendments at issue both here and in Eddie M., supra, 31 Cal.4th 480, 3 Cal.Rptr.3d 119, 73 P.3d 1115, would only affect juvenile court cases in which all of the following events occurred after Proposition 21's effective date: (1) the person violated a criminal statute within the meaning of section 602, (2) the juvenile court adjudicated such offense in a section 602 proceeding and issued a dispositional order, including probation, (3) the person thereafter violated such probation within the meaning of section 777(a)(2), and (4) authorities initiated *267 a probation violation proceeding under section 777(a)(2). Such a scenario could postpone  perhaps by many years  the significant rehabilitative and public safety aims the changes were meant to achieve. Thus, to ensure accountability for new misconduct alleged as juvenile probation violations, it seems reasonable to conclude that Proposition 21 covers any probationer whose section 777 hearing takes place after March 7, 2000, whether or not the original section 602 crime occurred before that time.
Finally, this conclusion is consistent with how similar initiative measures have long been judicially construed. For instance, Tapia v. Superior Court (1991) 53 Cal.3d 282, 299, 279 Cal.Rptr. 592, 807 P.2d 434 (Tapia), concerned Proposition 115, the Crime Victims Justice Reform Act, which changed criminal trial procedure by, among other things, limiting counsel's role on voir dire and expanding the People's discovery rights. A capital defendant (Tapia) claimed these statutory changes did not apply in his trial because the charged crimes occurred before the initiative's effective date. (Tapia, supra, 53 Cal.3d at pp. 286-287, 299-300, 279 Cal.Rptr. 592, 807 P.2d 434.) Tapia emphasized that both Proposition 115 and related ballot materials were "entirely silent on the question of retrospectivity" (Tapia, supra, 53 Cal.3d at p. 287, 279 Cal.Rptr. 592, 807 P.2d 434), and that all statutes were "presumed to operate prospectively" absent clear evidence to the contrary. (Ibid.; see Pen. Code, § 3; People v. Hayes (1989) 49 Cal.3d 1260, 1274, 265 Cal.Rptr. 132, 783 P.2d 719.)
However, we determined that these general principles of statutory construction supported, rather than defeated, application of Proposition 115's new procedural rules in Tapia's case. "Even though applied to the prosecution of a crime committed before the law's effective date, a law addressing the conduct of trials still addresses conduct in the future. This is a principle that courts in this state have consistently recognized. Such a statute `"is not made retroactive merely because it draws upon facts existing prior to its enactment. . . . [Instead,] [t]he effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future."' [Citations.] For this reason, we have said that `it is a misnomer to designate [such statutes] as having retrospective effect.' [Citation.] [¶] . . . [¶] . . . [Thus,] a law governing the conduct of trials is being applied `prospectively' when it is applied to a trial occurring after the law's effective date, regardless of when the underlying crime was committed." (Tapia, supra, 53 Cal.3d 282, 288-289, 279 Cal.Rptr. 592, 807 P.2d 434, italics added; accord, Albertson v. Superior Court (2001) 25 Cal.4th 796, 804, 107 Cal.Rptr.2d 381, 23 P.3d 611 [new statute making mental health data available for use against sexually violent predators in civil commitment proceedings applies in both pending and future cases].)
We must assume that Proposition 21 voters knew about and followed Tapia, supra, 53 Cal.3d 282, 279 Cal.Rptr. 592, 807 P.2d 434. (See Eddie M., supra, 31 Cal.4th 480, 495-496, 3 Cal.Rptr.3d 119, 73 P.3d 1115 [electorate presumed to be aware of existing law when amending statutes].) Much like the initiative statutes that Tapia construed, Proposition 21's standard of proof and evidentiary provisions concern the conduct and procedure to be followed in future section 777 proceedings, i.e., juvenile probation violation hearings held after March 7, 2000. (Tapia, supra, 53 Cal.3d at p. 288, 279 Cal.Rptr. 592, 807 P.2d 434.) Nothing in the relevant text or history suggests an intent to postpone this effective date, or to otherwise limit Proposition 21 depending upon *268 when criminal conduct in the original section 602 proceeding occurred. We reject petitioners' contrary construction.

B. Ex Post Facto Challenge to Amended Statute

1. General Principles
Petitioners insist Proposition 21 cannot cover any section 777(a)(2) proceeding in which the probationer committed his section 602 crime before the initiative took effect, even where the disputed probation violation occurred after that date. The claim rests on parallel federal and state ex post facto guarantees. (See U.S. Const., art. I, § 10; Cal. Const., art. I, § 9; Tapia, supra, 53 Cal.3d 282, 295-297, 279 Cal.Rptr. 592, 807 P.2d 434 [placing no different meaning on federal and state ex post facto clauses, and following United States Supreme Court cases on the subject].)
In general, the high court has established that no statute falls within the ex post facto prohibition unless "two critical elements" exist. (Miller v. Florida (1987) 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (Miller); Weaver v. Graham (1981) 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (Weaver).) First, the law must be retroactive. Such a law "`change[s] the legal consequences of an act completed before [the law's] effective date,' namely the defendant's criminal behavior." (Tapia, supra, 53 Cal.3d 282, 288, 279 Cal.Rptr. 592, 807 P.2d 434, quoting Weaver, supra, 450 U.S. at p. 31, italics added.) In other words, the operative event for retroactivity purposes, and the necessary reference point for any ex post facto analysis, is criminal conduct committed before the disputed law took effect.
Second, only certain changes in the statutory effect of past criminal conduct implicate ex post facto concerns. Since its decision in Collins v. Youngblood (1990) 497 U.S. 37, 41-42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (Collins), the United States Supreme Court has followed the original intent of the Constitution, and reaffirmed the principles first announced in Calder v. Bull (1798) 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (opn. of Chase, J.) (Calder). (Accord, Stogner v. California (2003) 539 U.S. 607, ___, 123 S.Ct. 2446, 156 L.Ed.2d 544, 552 (Stogner); Carmell v. Texas (2000) 529 U.S. 513, 521-522, 120 S.Ct. 1620, 146 L.Ed.2d 577 (Carmell).) Specifically, retroactive amendments to penal statutes do not violate ex post facto principles unless they implicate at least one of four categories described in Calder, supra, 3 U.S. (3 Dall.) at page 390 (opn. of Chase, J.).[3]
Critical here are Calder's last two categories. The third category concerns laws that "inflict[ ] a greater punishment" than what was authorized when the crime occurred. (Calder, supra, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (opn. of Chase, J.).) The fourth Calder category involves laws that adopt new "rules of evidence" and allow "less[ ] or different testimony" than *269 what was required "to convict the offender" when he committed the crime. (Ibid.) By design, these principles allow individuals to rely on existing penal statutes, and to avoid being unjustly convicted and punished because the law thereafter changed. (Stogner, supra, 539 U.S. 607, ___, 123 S.Ct. 2446, 156 L.Ed.2d 544, 551; Carmell, supra, 529 U.S. 513, 531-533, 120 S.Ct. 1620, 146 L.Ed.2d 577.)
In the nearly 200 years between the decisions in Calder, supra, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648, and Collins, supra, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30, more expansive definitions of ex post facto laws arose. However, Collins disavowed them. (Ansell, supra, 25 Cal.4th 868, 884, 108 Cal.Rptr.2d 145, 24 P.3d 1174; accord, California Dept. of Corrections v. Morales (1995) 514 U.S. 499, 506, 115 S.Ct. 1597, 131 L.Ed.2d 588, fn. 3 (Morales); In re Rosenkrantz (2002) 29 Cal.4th 616, 639-640, 128 Cal.Rptr.2d 104, 59 P.3d 174.)
In particular, the high court criticized some of its own decisions for disallowing any "procedural change" that withdraws "`substantial protections'" or "`substantial personal rights'" existing at the time of the crime. (Collins, supra, 497 U.S. 37, 45, 110 S.Ct. 2715, 111 L.Ed.2d 30.) Collins explained that regardless of its label or form (id. at p. 46, 110 S.Ct. 2715), a law does not raise ex post facto concerns unless it works in the manner Calder, supra, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648, proscribes.
Collins also overruled two high court cases invalidating statutes merely because they "`"alter[ed] the situation of a party to his disadvantage"'" after the crime occurred. (Collins, supra, 497 U.S. 37, 47, 110 S.Ct. 2715, 111 L.Ed.2d 30.) The court made clear in Collins (id. at pp. 47-52, 110 S.Ct. 2715) that this test is too amorphous, and contravenes the exclusive ex post facto definition in Calder, supra, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648.
Finally, Collins and its progeny show that adjustments in "the procedures by which a criminal case is adjudicated" rarely implicate ex post facto concerns. (Collins, supra, 497 U.S. 37, 45, 110 S.Ct. 2715, 111 L.Ed.2d 30.) Such laws do not typically enhance punishment under the third Calder category. (See Lynce v. Mathis (1997) 519 U.S. 433, 447, 117 S.Ct. 891, 137 L.Ed.2d 63, fn. 17 (Lynce) [contrasting "procedural" statute that permissibly alters "`the methods employed in determining'" punishment with laws impermissibly changing "`the quantum of punishment'"].) Also, absent reductions in the "quantum of evidence required to convict" under Calder's fourth category (Carmell, supra, 529 U.S. 513, 532, 120 S.Ct. 1620, 146 L.Ed.2d 577), the high court has permitted the retroactive withdrawal of statutory protections regulating the conduct of criminal trials. (See, e.g., Collins, supra, 497 U.S. at pp. 39-40, 110 S.Ct. 2715 [allowing correction of flawed verdict on appeal and denying new jury trial]; see id. at pp. 50-52, 110 S.Ct. 2715, overruling both Kring v. Missouri (1883) 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 [barring withdrawal of acquittal defense to first degree murder based on prior guilty plea to lesser offense] and Thompson v. Utah (1898) 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 [barring reduction in size of criminal juries].)
We now use these principles and authorities to analyze the elements of the ex post facto violation alleged here.

2. Retroactivity Claim
Petitioners argue that amended section 777 is retroactive as applied to them, because it affects probation ordered for section 602 crimes predating Proposition 21. Though triggered by new misconduct committed and litigated after Proposition *270 21 took effect, the new statutory rules for proving probation violations assertedly relate back to the prior criminal acts for ex post facto purposes.
No federal or state authority compels acceptance of this claim. Both this court and the Courts of Appeal have long held that someone who was convicted and sentenced for one crime, and who commits a new crime or other misconduct while either on conditional release or in custody for the original conviction, is subject to new penalties and adverse procedural laws enacted between the time of the two acts.[4] Rejecting ex post facto claims like the one raised here, these cases reason that the new law merely alters the legal consequences of new misconduct (as opposed to prior crimes), and that it therefore has prospective (as opposed to retroactive) effect.[5] Hence, under the foregoing authorities, section 777, as amended by Proposition 21, is not retroactive as to the section 602 crimes supporting the ex post facto claims.
Petitioners nonetheless rely on dictum in Johnson v. United States (2000) 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (Johnson), as persuasive authority for their retroactivity claim. There, a convicted felon, Johnson, committed new misconduct that violated the terms of his federal "supervised release," which is not unlike parole. The district court revoked Johnson's supervised release, resentenced him to prison, and ordered him to serve an additional year of supervised release when he left prison. (Id. at pp. 697-698, 120 S.Ct. 1795.) The statutory source of the last requirement was unclear.
In the Sixth Circuit Court of Appeals, Johnson argued that the additional period of supervised release was not authorized by federal law when he committed the crime for which he was originally convicted. Johnson also claimed that his sentence *271 could not be upheld under a new statute explicitly authorizing additional terms of supervised release. Because the new statute was enacted before the new misconduct but after the original crime, Johnson claimed its application would retroactively increase punishment for that crime in violation of the ex post facto clause. (Johnson, supra, 529 U.S. 694, 698, 120 S.Ct. 1795, 146 L.Ed.2d 727.)
The Sixth Circuit agreed with Johnson that only the new statute permitted an additional period of supervised release of the kind he received. Nevertheless, Johnson's ex post facto challenge to the new statute failed. The appellate court held that because revocation and related provisions of the new statute penalized Johnson for violating the conditions of his initial term of supervised release, they were prospective only and did not impermissibly enhance punishment for the original crime. (Johnson, supra, 529 U.S. 694, 698-699, 120 S.Ct. 1795, 146 L.Ed.2d 727.)
The United States Supreme Court found it "unnecessary" to reach and resolve this ex post facto question in order to uphold Johnson's sentence. (Johnson, supra, 529 U.S. 694, 696, 120 S.Ct. 1795, 146 L.Ed.2d 727.) Instead, as reflected in the bulk of the court's opinion, Johnson affirmed the judgment solely on statutory grounds. Although it found no evidence that Congress intended the new statute to cover past crimes like Johnson's, the high court held that an additional period of supervised release was implicitly authorized under prior law in existence when the original crime occurred. (Id. at pp. 701-713, 120 S.Ct. 1795; see id. at pp. 713-715, 120 S.Ct. 1795 (conc. opn. of Kennedy, J.); id. at p. 715, 120 S.Ct. 1795 (conc. opn. of Thomas, J.); id. at pp. 715-727, 120 S.Ct. 1795 (dis. opn. of Scalia, J.).)
In a brief passage divorced from its statutory analysis, Johnson discussed whether applying the new statute would involve retroactivity in the constitutional sense. The high court questioned the Sixth Circuit's view that revocation and related sanctions do not "relate to the original offense" (Johnson, supra, 529 U.S. 694, 701, 120 S.Ct. 1795, 146 L.Ed.2d 727), and only constitute "punishment for the violation of the conditions of supervised release." (Id. at p. 700, 120 S.Ct. 1795.) Johnson noted, for instance, that "[a]lthough such violations often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt." (Ibid.) In other words, unless postrevocation penalties are deemed punishment for the crime originally proven beyond a reasonable doubt, due process problems might arise insofar as the reasonable doubt standard is not otherwise used to prove new misconduct in a parole or probation revocation matter. (Ibid., citing Gagnon v. Scarpelli (1973) 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 [reasonable doubt standard excluded from list of due process protections required to revoke adult probation]; see Morrissey v. Brewer (1972) 408 U.S. 471, 488-489, 92 S.Ct. 2593, 33 L.Ed.2d 484 [same as to adult parolees].)
As noted, California cases predating Johnson, supra, 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727, have analyzed retroactivity similarly with the Sixth Circuit view questioned therein. Moreover, consistent with the instant Court of Appeal decision, Johnson's suggestion that "postrevocation penalties" are "attribute[d]" to the original offense is not binding here. (Id. at p. 701, 120 S.Ct. 1795.) Such language had no bearing on Johnson's statutory holding or rationale. Nor, as discussed below, do Proposition 21's changes to section 777 extend the maximum term *272 of confinement for prior section 602 crimes, increase the maximum level of restraint, or otherwise trigger penalties like those challenged in Johnson, supra, 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727.[6]
Nevertheless, in light of the dictum in Johnson, we will assume, without deciding, that the relevant conduct or reference point for assessing petitioners' ex post facto claim is the pre-Proposition 21 criminal conduct producing the section 602 adjudications, rather than the post-Proposition 21 misconduct triggering the alleged probation violations. Thus, for purposes of argument only, application of Proposition 21 to the present section 777 proceedings "`change[s] the legal consequences'" of acts committed before the law's effective date. (Tapia, supra, 53 Cal.3d 282, 288, 279 Cal.Rptr. 592, 807 P.2d 434, quoting Weaver, supra, 450 U.S. 24, 31, 101 S.Ct. 960, 67 L.Ed.2d 17.) We now decide whether those "consequences" are constitutionally allowed.

3. Calder/Carmell Claim
Petitioners emphasize the fourth category under Calder, supra, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (opn. of Chase, J.), which concerns rules allowing "less[ ] or different testimony" than what was previously required "to convict the offender." Petitioners complain that by easing the standards of proof and evidence in section 777 hearings over what existed when the section 602 crimes occurred, Proposition 21 makes it easier for the state to prove a probation violation and to modify disposition in punitive ways. Petitioners rely on Carmell, supra, 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577  the lone high court case to bar use of a statute under Calder's fourth category. (See id. at p. 569, 120 S.Ct. 1620 (dis. opn. of Ginsburg, J.).)
In Carmell, and as pertinent here, the defendant was charged in a Texas criminal court with sexually molesting his stepdaughter while she was between 14 and 16 years old. When the crimes occurred, state law provided that "`[a] conviction *273 [for sexual assault] . . . is supportable'" either if it was corroborated by evidence independent of the victim's testimony, or if the victim informed a third person of the offense within six months of its commission. (Carmell, supra, 529 U.S. 513, 517, 120 S.Ct. 1620, 146 L.Ed.2d 577.) The same statute recognized an exception to the corroboration and "outcry" requirements for victims under the age of 14, such that their testimony could sustain a conviction even in the absence of any corroboration or outcry evidence. If the statutory requirements were not met, either because corroboration or outcry was lacking, or because the victim was not under the age of 14 when the crime occurred, then the defendant could not be convicted and the trial court would be compelled to enter an acquittal. However, compliance with the statute allowed the jury to decide the case and enter a guilty verdict. (Id. at pp. 517-518, 120 S.Ct. 1620 & fn. 2.)
After the defendant committed the charged crimes, an amendment to the relevant statute expanded the child-victim exception, and allowed sexual assault convictions to rest solely on the testimony of victims under the age of 18. The amendment, which was applied in the defendant's trial, relieved the prosecution of its duty under prior law either to corroborate the stepdaughter's account or to establish that she disclosed the crime within six months. The trier of fact convicted the defendant based solely on the stepdaughter's testimony. (Carmell, supra, 529 U.S. 513, 518-519, 120 S.Ct. 1620, 146 L.Ed.2d 577 & fn. 4.) The judgment was affirmed on appeal in state court. To reach this result, the appellate court used a principle approved in Collins, supra, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30, that exempted ordinary "evidentiary rules" from the ex post facto ban. (Id. at p. 43, 110 S.Ct. 2715, fn. 3, citing Hopt v. Utah (1884) 110 U.S. 574, 590, 4 S.Ct. 202, 28 L.Ed. 262 [upholding retroactive statute making felons competent to testify as witnesses].)
In a five-to-four decision, the United States Supreme Court rejected the intermediate court's approach in Carmell. The majority first examined the 300-year-old Fenwick's case. There, Parliament retroactively reduced the number of witnesses needed to sustain a treason conviction in order to successfully prosecute certain political enemies of the Crown. (Carmell, supra, 529 U.S. 513, 526-530, 120 S.Ct. 1620, 146 L.Ed.2d 577.) The majority observed that Justice Chase, who studied both Fenwick's case and common law treatises on the subject, framed the fourth ex post facto category in Calder, supra, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648, to prevent such a scenario. (Carmell, supra, 529 U.S. at pp. 522-524, 526, 120 S.Ct. 1620, & fn. 13.) The majority explained that just as the law in Fenwick's case originally required more than one witness's testimony to sustain a treason conviction, Texas law at the time of the defendant's crimes required more than the stepdaughter's testimony to support a sex crime conviction. Postcrime changes requiring only one witness in Fenwick's case, and eliminating the corroboration and outcry requirements in the defendant's case, suffered from the same flaw in the majority's view  reducing "the quantum of evidence necessary to sustain a conviction." (Carmell, supra, 529 U.S. at p. 530, 120 S.Ct. 1620.)
The Carmell majority further explained that this view of the fourth Calder category serves interests similar to other ex post facto proscriptions against laws altering the definition of crimes or the quantum of punishment. "In each of these instances, the government subverts the presumption of innocence by reducing the number of elements it must prove to overcome that presumption; by threatening such severe *274 punishment so as to induce a plea to a lesser offense or a lower sentence; or by making it easier to meet the threshold for overcoming the presumption. Reducing the quantum of evidence necessary to meet the burden of proof is simply another way of achieving the same end. . . . [T]he government refuses, after the fact, to play by its own rules, altering them in a way that is advantageous only to the State, to facilitate an easier conviction." (Carmell, supra, 529 U.S. 513, 532-533, 120 S.Ct. 1620, 146 L.Ed.2d 577, fn. omitted.)
Responding to an argument made by both the State and the dissenting justices, the Carmell majority declined to view the statute as merely a rule affecting the admissibility and competency of evidence under Hopt v. Utah, supra, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262. (See Carmell, supra, 529 U.S. 513, 542-552, 120 S.Ct. 1620, 146 L.Ed.2d 577.) The majority noted that such rules do not implicate ex post facto concerns because they benefit each side in a given case. (Carmell, supra, at pp. 533, fn. 23, 546, 120 S.Ct. 1620.) However, both before and after the Texas law changed, the victim's testimony was competent and admissible in a sexual assault prosecution. (Id. at p. 544, 120 S.Ct. 1620.) The majority thus could only infer that the amendment altered the "sufficiency" of such evidence to meet the state's burden of proof. (Id. at p. 545, 120 S.Ct. 1620.) The majority stressed that such postcrime changes always favor the prosecution, "because they always make it easier to convict the accused." (Id. at p. 546, 120 S.Ct. 1620.)
Finally, Carmell, supra, 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577, rejected any suggestion that the relevant ex post facto principles had been previously abandoned or disapproved. The majority cited many high court decisions endorsing the fourth Calder category. (Carmell, at p. 525, 120 S.Ct. 1620.) The Carmell majority also noted (id. at pp. 537-538, 120 S.Ct. 1620) that Collins, supra, 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30, embraced the complete four-part test in Calder, supra, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (opn. of Chase, J.). Concluding that retroactive application of the revised Texas law violated the fourth Calder category, the majority reversed the convictions obtained in Carmell. (Id. at p. 553, 120 S.Ct. 1620.)
It seems clear that Carmell neither concerns nor precludes amendments like those at issue here. As we have seen, the proscribed retroactive change is one affecting the criminal trial for the act subject to ex post facto protection. The fourth Calder category, as approved in Collins, supra, 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30, and applied in Carmell, supra, 529 U.S. 513, 522, 120 S.Ct. 1620, 146 L.Ed.2d 577, is limited on its face to amendments reducing the quantum of evidence or otherwise easing the burden of proof required to "convict" someone of a charged crime. (Calder, supra, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (opn. of Chase, J.).) At numerous points, Carmell indicates that convictions in adult criminal court, and, presumably, their juvenile court counterparts, represent the sole concern of this ex post facto rule. (Carmell, supra, 529 U.S. at pp. 530, 531, 532, 533, 534, 538, 540, 541, 543, 545, 546, 547, 548, 549, 550, 551, 552 & fn. 35, 120 S.Ct. 1620; see In re Winship (1970) 397 U.S. 358, 365-368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (Winship) [drawing due process analogy between adjudicatory stage of juvenile delinquency proceeding and adult criminal prosecution, and applying reasonable doubt standard to any juvenile crime triggering conviction if committed by adult].)
Here, petitioners cannot show any impermissible procedural change affecting the criminal acts at the heart of their ex *275 post facto claim. Consistent with statutory and due process requirements, the original section 602 adjudications were obtained by "[p]roof beyond a reasonable doubt supported by evidence[ ] legally admissible in the trial of criminal cases." (§ 701; see Winship, supra, 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368; Eddie M., supra, 31 Cal.4th 480, 487, 3 Cal.Rptr.3d 119, 73 P.3d 1115.) Indeed, no section 602 adjudication is "`supportable'" unless this standard is met, whether pre- or post-Proposition 21 law otherwise applies. (Carmell, supra, 529 U.S. 513, 517, 120 S.Ct. 1620, 146 L.Ed.2d 577.) There has been no reduction in the sufficiency of evidence or standard of proof needed to find petitioners or any other juvenile guilty of a section 602 offense. Proposition 21 simply altered the rules for determining whether persons who are probationers as the result of prior section 602 adjudications violated the terms of their probation under section 777(a)(2).
We further reject any attempt to extend Carmell, and to apply the fourth Calder category here. As discussed further below, section 777 proceedings do not produce the equivalent of criminal "conviction[s]" under Carmell, supra, 529 U.S. at page 530, 120 S.Ct. 1620. When Proposition 21 added the preponderance and evidentiary standards in section 777(c), it also limited section 777(a)(2) to alleged probation violations "not amounting to . . . crime[s]." (Eddie M., supra, 31 Cal.4th 480, 491, 3 Cal.Rptr.3d 119, 73 P.3d 1115; see id. at pp. 501-502, 3 Cal.Rptr.3d 119, 73 P.3d 1115 [Prop. 21 followed adult probation revocation procedures in Pen.Code, § 1203.2].) Whatever the nature of the acts, section 777 cannot be used to plead substantive crimes as such, to obtain new criminal adjudications, or to increase sanctions imposed for the original section 602 offense. (Eddie M., supra, 31 Cal.4th at pp. 486, 501, 506-507, 3 Cal.Rptr.3d 119, 73 P.3d 1115; see id. at pp. 489-490, 3 Cal.Rptr.3d 119, 73 P.3d 1115 [before Prop. 21, § 777 operated much like § 602's "new crime" procedure].) Hence, the challenged amendments do not implicate Carmell, supra, 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577, insofar as that case preserves the state's duty to prove a charged crime beyond a reasonable doubt by the evidence required when the act occurred. (Cf. Eddie M., supra, 31 Cal.4th at pp. 502-508, 3 Cal.Rptr.3d 119, 73 P.3d 1115 [juvenile probation violations need not be proven beyond a reasonable doubt, and § 777(c)'s preponderance standard survives due process scrutiny]; People v. Rodriguez (1990) 51 Cal.3d 437, 441-442, 272 Cal.Rptr. 613, 795 P.2d 783 [same as to adult probation violations].)
Moreover, petitioners' insistence on evaluating the present proceedings under Carmell, supra, 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577, seems inconsistent with their retroactivity claim under Johnson, supra, 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727. Petitioners allegedly violated probation after voters amended section 777 to include the procedural rules challenged here. By complaining under Carmell, about the manner in which their probation violations are litigated, petitioners arguably make such post-Proposition 21 misconduct the reference point of their ex post facto claim. However, as implied by their reliance on Johnson, petitioners suffer no ex post facto violation absent an impermissible retroactive change with respect to the section 602 crimes committed before Proposition 21 took effect. It seems illogical for petitioners to invoke Carmell, supra, 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577, while claiming to satisfy the retroactivity component of an *276 alleged constitutional violation.[7]

4. Calder/Punishment Claim
Petitioners also allude to the third Calder category, which concerns ex post facto laws inflicting "greater punishment" than what was authorized when the crime occurred. (Calder, supra, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (opn. of Chase, J.).) The basic contention is that because section 777(c)'s new preponderance and evidentiary standards increase the chance that the juvenile court will find a probation violation and order a more restrictive placement, Proposition 21 retroactively increases punishment for the original section 602 crimes.
First and foremost, we reject the suggestion that Proposition 21's new procedures for modifying disposition under section 777 are themselves punishment. As we have seen, an ex post facto violation does not occur simply because a postcrime law withdraws substantial procedural rights in a criminal case. (Collins, supra, 497 U.S. 37, 45-46, 110 S.Ct. 2715, 111 L.Ed.2d 30.) Even new methods for determining a criminal sentence do not necessarily involve punishment in the ex post facto sense. (Lynce, supra, 519 U.S. 433, 447, fn. 17, 117 S.Ct. 891, 137 L.Ed.2d 63, following Dobbert v. Florida (1977) 432 U.S. 282, 292-294, 97 S.Ct. 2290, 53 L.Ed.2d 344 [final decision on death penalty moved from jury to trial court, subject to automatic appellate review].) Otherwise, the high court would have retained the expansive principles that Collins, supra, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30, disapproved. There also would have been no need to revitalize the fourth Calder category in Carmell, supra, 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577. If "punishment" increased whenever new standards of proof and evidence disadvantaged a criminal offender, the third Calder category would always apply, and the fourth category would be superfluous.
Contrary to what petitioners imply, the ex post facto clause regulates increases in the "`"quantum of punishment."'" (Lynce, supra, 519 U.S. 433, 443, 117 S.Ct. 891, 137 L.Ed.2d 63, quoting Morales, supra, 514 U.S. 499, 508, 115 S.Ct. 1597, 131 L.Ed.2d 588, italics added.) Although no universal definition exists (Morales, at p. 509, 115 S.Ct. 1597), this concept appears limited to substantive measures, standards, and formulas affecting the time spent incarcerated for an adjudicated crime. For example, an ex post facto violation occurs where laws setting the length of a prison sentence are revised after the crime to contain either a longer mandatory minimum term (Lindsey v. Washington *277 (1937) 301 U.S. 397, 400, 57 S.Ct. 797, 81 L.Ed. 1182), or a higher presumptive sentencing range (Miller, supra, 482 U.S. 423, 432-433, 107 S.Ct. 2446, 96 L.Ed.2d 351). Impermissible increases in punishment also have been found where a new postcrime formula for earning gain-time credits postpones an inmate's eligibility for early release (Weaver, supra, 450 U.S. 24, 33, 101 S.Ct. 960, 67 L.Ed.2d 17), or where retroactive cancellation of overcrowding credits requires reimprisonment of an inmate who has been freed. (Lynce, supra, 519 U.S. at p. 445, 117 S.Ct. 891.)
However, not every amendment having "any conceivable risk" of lengthening the expected term of confinement raises ex post facto concerns. (Morales, supra, 514 U.S. 499, 508, 115 S.Ct. 1597, 131 L.Ed.2d 588.) In Morales, a California law allowed the parole board, after holding an initial hearing, to defer subsequent parole suitability hearings up to three years for inmates convicted of multiple homicides, provided it found parole was not reasonably likely to occur sooner. (Id. at p. 503, 115 S.Ct. 1597.) Finding no retroactive increase in punishment, the high court emphasized that there had been no change in the applicable indeterminate term, in the formula for earning sentence reduction credits, or in the standards for determining either the initial date of parole eligibility or the prisoner's suitability for parole. (Id. at p. 507, 115 S.Ct. 1597.) The court also observed that the statute, by its own terms, affected a small class of prisoners not likely to be paroled, and allowed the board to shorten the time between hearings based on the particular circumstances. (Id. at pp. 510-513, 115 S.Ct. 1597.) At bottom, no ex post facto violation occurred because the risk of longer confinement was "speculative and attenuated" (id. at p. 509, 115 S.Ct. 1597), and because the prisoner's release date was essentially "unaffected" by the postcrime change. (Id. at p. 513, 115 S.Ct. 1597; cf. Garner v. Jones (2000) 529 U.S. 244, 255, 120 S.Ct. 1362, 146 L.Ed.2d 236 [concluding that new Georgia rule allowing up to eight years between parole hearings for life prisoners did not necessarily increase confinement, and remanding to determine whether rule created "significant risk" of greater punishment "as applied" in that case].)
Here, any penal consequences attributable to petitioners' section 602 crimes are "unaffected" by the section 777 procedures that Proposition 21 introduced. (Morales, supra, 514 U.S. 499, 513, 115 S.Ct. 1597, 131 L.Ed.2d 588.) A brief look at the juvenile court's dispositional role under section 602 and section 777 illustrates the point.
For 20 years, the express purpose of the statutory scheme has been to rehabilitate juvenile offenders while both protecting the public and holding the person accountable for his misconduct. (§ 202, added by Stats.1984, ch. 756, § 2, p. 2726.) Thus, under both pre- and post-Proposition 21 law, a crime alleged and sustained beyond a reasonable doubt under section 602 triggers broad discretion in the juvenile court to order probation under various conditions, to keep the probationer in the physical custody of a parent or guardian, or to declare the probationer a court ward and to place him in one of several kinds of juvenile facilities. (See §§ 202, subd. (e), 725, 726, 727, 730, 731, 734.) Whenever a section 602 ward and probationer is removed from the custody of a parent or guardian, the order must specify that physical confinement cannot exceed the maximum term of imprisonment that could be imposed upon an adult convicted of the same crime. (See §§ 726, subd. (c), 731, subd. (b).) The juvenile court may aggregate terms of confinement for multiple section 602 counts or petitions, including previously sustained petitions. (§ 726, subd. *278 (c); see Eddie M., supra, 31 Cal.4th 480, 488-489, 3 Cal.Rptr.3d 119, 73 P.3d 1115.)
Before it was amended by Proposition 21, section 777 could be used in different ways against section 602 wards and probationers. Specifically, between 1986 and 2000, officials could (1) allege a probation violation "not amounting to a crime," and seek a more restrictive placement than the one already in effect, and/or (2) allege a probation violation "amounting to a crime" (i.e., a new section 602 offense), and seek the full range of consequences attending a new section 602 petition. (§ 777, former subd. (a)(2), as amended by Stats.1986, ch. 757, § 5, p. 2478; see Eddie M., supra, 31 Cal.4th 480, 489-490, 3 Cal.Rptr.3d 119, 73 P.3d 1115.)[8] In either case, jurisdictional hearings held under former section 777, as amended in 1986, followed the same procedures as section 602 jurisdictional hearings, including proof beyond a reasonable doubt supported by evidence admissible in criminal trials. (See Arthur N., supra, 16 Cal.3d 226, 240, 127 Cal.Rptr. 641, 545 P.2d 1345; Cal. Rules of Court, former rule 1392(d)(1), adopted eff. July 1, 1977.)
In 2000, of course, Proposition 21 deleted the reference to probation violations "amounting to . . . crime[s]" from section 777(a)(2), and adopted the procedures challenged here. (See § 777(c).) Proposition 21 thereby ended use of the statute to plead and prove probation violations as crimes, and to increase the maximum period of confinement for crimes previously adjudicated under section 602. (Eddie M., supra, 31 Cal.4th 480, 486, 501, 507, 3 Cal.Rptr.3d 119, 73 P.3d 1115.)
However, no other drastic change in the court's dispositional role occurred when Proposition 21 amended section 777. After finding a probation violation and considering any other evidence bearing on disposition, the juvenile court crafts an order that promotes rehabilitation, public safety, and accountability under section 202  aims the voters explicitly reaffirmed under Proposition 21. (Eddie M., supra, 31 Cal.4th 480, 500, 507, 3 Cal.Rptr.3d 119, 73 P.3d 1115.) In addition, the court selects the appropriate disposition from the same array of statutory options available both before Proposition 21 took effect and when the section 602 offense was adjudicated. Thus, under post-Proposition 21 law, the dispositional order in a section 777 proceeding may make little or no change in probationary terms and placement. (See, e.g., In re Emiliano M. (2003) 31 Cal.4th 510, 513-514, 3 Cal.Rptr.3d 140, 73 P.3d 1132.) Or it may involve a more restrictive placement of the kind that has long been used, and could have been employed, upon appropriate findings, at the outset of the case. (See, e.g., Eddie M., *279 supra, 31 Cal.4th at pp. 492-493, 3 Cal.Rptr.3d 119, 73 P.3d 1115.)[9]
Furthermore, both before and after Proposition 21, a change in placement under section 777 need not follow any particular order, including from the least to the most restrictive. The juvenile court also does not necessarily abuse its discretion by ordering the most restrictive placement under section 777 before other options have been tried. (Eddie M., supra, 31 Cal.4th at pp. 507, 508, 3 Cal.Rptr.3d 119, 73 P.3d 1115.) Similar principles have long guided section 602 dispositional proceedings. (Eddie M., supra, at pp. 488, 507, 3 Cal.Rptr.3d 119, 73 P.3d 1115.)[10]
In sum, the challenged amendments merely enhance the juvenile court's opportunity to exercise authority and discretion similar to what it possessed in both the original section 602 proceeding and under section 777, in its pre-Proposition 21 form. Proposition 21 created no mandatory term or level of confinement for probation violations found under section 777(a)(2). Nor do such proceedings increase either the maximum length of confinement or the maximum level of restraint over those initially permissible for the section 602 crime itself. Accordingly, we see no "significant risk" that Proposition 21's new rules for conducting section 777 hearings will increase punishment for petitioners' pre-Proposition 21 crimes. (Garner v. Jones, supra, 529 U.S. 244, 255, 120 S.Ct. 1362, 146 L.Ed.2d 236.)
Petitioners insist that under Arthur N., supra, 16 Cal.3d 226, 127 Cal.Rptr. 641, 545 P.2d 1345, the juvenile court aggravates punishment whenever it orders a more restrictive placement under section 777(a)(2). We are asked to find an ex post facto violation insofar as Proposition 21 increases the chance of such an outcome for probation violators whose section 602 *280 crimes predated the statutory change. We reject the claim.
In Arthur N., supra, 16 Cal.3d 226, 229-230, 127 Cal.Rptr. 641, 545 P.2d 1345, the juvenile court sustained a robbery allegation under the pre-1986 version of section 777, and committed the section 602 ward and probationer to the Youth Authority. This court found a due process violation insofar as the robbery was not adjudicated under a reasonable doubt standard of proof. We reasoned that no juvenile could be confined for violating the criminal law "`on proof insufficient to convict him were he an adult.'" (Arthur N., supra, 16 Cal.3d at p. 240, 127 Cal.Rptr. 641, 545 P.2d 1345, quoting Winship, supra, 397 U.S. 358, 367, 90 S.Ct. 1068, 25 L.Ed.2d 368.) In the process, Arthur N. declined to analogize section 777 hearings to proceedings in which adult probation violations are found by a preponderance of the evidence, and in which revocation triggers the prison sentence imposed for the original conviction. Arthur N. explained that "while the adult whose probation is revoked may not be subjected to any greater punishment than that provided for the original offense, a juvenile adjudged a [section 602 ward may be] . . . subjected to increasingly severe and restrictive custody which exceeds that which would have been permissible initially." (Arthur N., supra, 16 Cal.3d at p. 237, 127 Cal.Rptr. 641, 545 P.2d 1345.) The Arthur N. court was similarly concerned (id. at p. 239, 127 Cal.Rptr. 641, 545 P.2d 1345) that the length of confinement under section 777 was not "proportionate" to the original section 602 crime.
However, as Eddie M., supra, 31 Cal.4th 480, 3 Cal.Rptr.3d 119, 73 P.3d 1115, explained in rejecting Arthur N.'s due process rule concerning the reasonable doubt standard, subsequent changes in statutory law have undermined the reasoning of that case. Arthur N., supra, 16 Cal.3d 226, 237, 127 Cal.Rptr. 641, 545 P.2d 1345, based its concern with "greater punishment" on the assumption that new crimes could be pled and proved under section 777  a practice ended by Proposition 21. In a related vein, the rule requiring the juvenile court to calculate the maximum period of confinement for the original section 602 offense was added, and then refined, shortly after Arthur N. was decided. (§ 726, subd. (c), added by Stats.1976, ch. 1071, § 29, p. 4827, and amended by Stats.1977, ch. 1238, § 1, p. 4158, eff. Oct. 1, 1977.) This feature ensures that confinement is proportionate to the original crime, and prevents section 777 from having any contrary effect. (Eddie M., supra, 31 Cal.4th at pp. 506, 508, 3 Cal.Rptr.3d 119, 73 P.3d 1115.)
Furthermore, the statutory scheme no longer requires that placement alternatives run from the least to the most restrictive, and that they be "ratcheted up" gradually based on the person's behavior at earlier levels. The juvenile court has broad discretion at disposition to implement the priorities in section 202  a statute codified after Arthur N. was decided. We cannot assume that any new placement ordered under section 777 necessarily exceeds what was permissible before. (Eddie M., supra, 31 Cal.4th at pp. 488, 507, 508, 3 Cal.Rptr.3d 119, 73 P.3d 1115.) For these reasons, we find no ex post facto increase in punishment for petitioners' section 602 crimes.

III. CONCLUSION
Section 777, as amended by Proposition 21, can be applied to petitioners without offending ex post facto principles. The judgment of the Court of Appeal is affirmed.
*281 WE CONCUR: GEORGE, C.J., KENNARD, WERDEGAR, CHIN, BROWN, and MORENO, JJ.
NOTES
[1] All unlabeled statutory references are to the Welfare and Institutions Code.
[2] Section 777, as amended by Proposition 21, provides, in part, as follows: "An order changing or modifying a previous order by [dictating a more restrictive placement] . . . shall be made only after a noticed hearing. [¶] (a) The notice shall be made as follows: [¶] . . . [¶] (2) By the probation officer or the prosecuting attorney if the minor is a court ward or probationer under Section 602 in the original matter and the notice alleges a violation of a condition of probation not amounting to a crime. The notice shall contain a concise statement of facts sufficient to support this conclusion. [¶] . . . [¶] (c) The facts alleged in the notice shall be established by a preponderance of the evidence at a hearing to change, modify, or set aside a previous order. The court may admit and consider reliable hearsay evidence at the hearing to the same extent that such evidence would be admissible in an adult probation revocation hearing, pursuant to the decision in People v. Brown [(1989) 215 Cal.App.3d 452, [263 Cal.Rptr. 391]] and any other relevant provision of law."
[3] Calder's familiar description of ex post facto laws reads as follows: "1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.2d. Every law that aggravates a crime, or makes it greater than it was, when committed.3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender." (Calder, supra, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (opn. of Chase, J.); see id. at p. 389 (opn. of Chase, J.) [similar statement of test]; see also Stogner, supra, 539 U.S. 607, ___, 123 S.Ct. 2446, 156 L.Ed.2d 544, 552.) We will summarily refer to this list as the "Calder categories," focusing on the third and fourth items.
[4] E.g., People v. Helms (1997) 15 Cal.4th 608, 614-616, 63 Cal.Rptr.2d 620, 936 P.2d 1230 (new crime committed on probation triggers revocation and imprisonment for term that includes new consecutive sentence authorized under "Three Strikes" law); In re Ramirez (1985) 39 Cal.3d 931, 936-937, 218 Cal.Rptr. 324, 705 P.2d 897 (new misconduct committed in prison triggers new statute increasing amount of credits that can be withdrawn as to sentence being served); In re Etie (1946) 27 Cal.2d 753, 759-760, 167 P.2d 203 (new crime committed on parole triggers revocation and recalculation of prison term under new procedural rules limiting right to contest sentence change); In re Nolasco (1986) 181 Cal.App.3d 39, 42-43, 226 Cal.Rptr. 65 (new misconduct committed while confined for parole violation triggers new statute extending parole revocation release date); In re LeDay (1985) 177 Cal.App.3d 461, 464-465, 221 Cal.Rptr. 398 (same); cf. In re Valenzuela (1969) 275 Cal.App.2d 483, 487, 79 Cal.Rptr. 760 (refusing to apply law enacted after juvenile offense that allowed, based on continuing dangerousness, extension of Youth Authority's jurisdiction and transfer to adult prison for indefinite confinement, where no jury trial on dangerousness was provided).
[5] Under a parallel line of authority, convicted criminals who commit a second crime after completing their sentence, including any probation or parole, are subject to harsher treatment as recidivists under new laws enacted between the time of the two crimes. California courts have held that such statutes are not retroactive and that no ex post facto violation thus occurs. (E.g., People v. Mesce (1997) 52 Cal.App.4th 618, 621-624, 60 Cal.Rptr.2d 745 [new crime of possessing firearm following misdemeanor assault conviction]; People v. Hatcher (1995) 33 Cal.App.4th 1526, 1528, 39 Cal.Rptr.2d 801 [enhanced sentence for prior conviction]; People v. Mills (1992) 6 Cal.App.4th 1278, 1283-1289, 8 Cal.Rptr.2d 310 [expanded definition of acts constituting possession of firearm by convicted felon]; People v. Williams (1983) 140 Cal.App.3d 445, 448-449, 189 Cal.Rptr. 497 [enhanced sentence for prior conviction]; People v. Venegas (1970) 10 Cal.App.3d 814, 822-823, 89 Cal.Rptr. 103 [increased sentence for possession of firearm by ex-felon].)
[6] The court in Johnson, supra, 529 U.S. 694, 701, 120 S.Ct. 1795, 146 L.Ed.2d 727, cited Greenfield v. Scafati (D.Mass. 1967) 277 F.Supp. 644, summarily affirmed sub nomine Scafati v. Greenfield (1968) 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (per curiam), for the proposition that revocation and related sanctions are generally attributed to the original crime. In Greenfield, a parole violator lost the right to earn good conduct credits during his first six months back in prison under a statute enacted after he committed his original crime but before he violated parole. Greenfield, supra, 277 F.Supp. at pages 645-646, found an ex post facto violation because the new statute disadvantaged the inmate by delaying his eligibility for early release. Greenfield did not explain its apparent assumption that the loss of credits was part of the punishment for the original crime. Nor did Greenfield consider whether the new statute operated prospectively by sanctioning parole violations committed after it took effect. Though not cited in Johnson, supra, 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727, various federal and out-of-state cases have concluded, notwithstanding the approach in Greenfield, supra, 277 F.Supp. 644, that postrevocation sanctions do not necessarily relate to the original crime for ex post facto purposes. These courts also have declined to invalidate statutes as impermissibly retroactive under circumstances similar to those present in both Greenfield and Johnson. (E.g., U.S. v. Byrd (5th Cir.1997) 116 F.3d 770, 772-773; U.S. v. Reese (6th Cir.1995) 71 F.3d 582, 590-591; Souza v. State (Alaska Ct.App.1990) 792 P.2d 289, 290; Gasper v. Gunter (Colo.1993) 851 P.2d 912, 917-918; Anderson v. Bruce (2002) 274 Kan. 37, 50 P.3d 1, 7-8; Still v. State (Me.1969) 256 A.2d 670, 672-673; Petition of Beaton (1968) 354 Mass. 670, 241 N.E.2d 845, 847-848; State v. Serena (Minn.Ct.App.2003) 673 N.W.2d 182, 187-188; State v. Monson (N.D.1994) 518 N.W.2d 171, 172-173; People ex rel. Newland v. Travis (N.Y Sup.Ct.2000) 185 Misc.2d 881, 714 N.Y.S.2d 627, 632; Watkins v. Class (S.D.1997) 566 N.W.2d 431, 433-434.)
[7] In In re Melvin J., supra, 81 Cal.App.4th 742, 96 Cal.Rptr.2d 917, the juvenile court found probation had been violated under section 777, and committed the section 602 probationer to the Youth Authority. All events (i.e., crime, probation violations, and section 602 and 777 proceedings) occurred before Proposition 21 amended section 777. In a decision issued after Proposition 21 took effect, the Court of Appeal determined that the juvenile court erred in not making certain findings under former section 777. In addition, the appellate court remanded for a new hearing under former section 777, because the new version of the statute  which made the omitted findings unnecessary  could not be applied consistently with ex post facto guarantees. In so holding, the court assumed that Proposition 21's new procedures related to the original crime and were retroactive under Johnson, supra, 529 U.S. 694, 701, 120 S.Ct. 1795, 146 L.Ed.2d 727. (In re Melvin J., supra, 81 Cal.App.4th at p. 757 & fn. 6, 96 Cal.Rptr.2d 917.) Critical here is In re Melvin J.'s further conclusion that the section 777 amendments violated the fourth Calder category, as construed in Carmell, supra, 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577. To the extent In re Melvin J., supra, 81 Cal.App.4th 742, 756-760, 96 Cal.Rptr.2d 917, is inconsistent with this opinion, it is disapproved.
[8] The version of section 777 in effect when Proposition 21 became law provided, in part, as follows: "An order changing or modifying a previous order by [dictating a more restrictive placement] . . . shall be made only after noticed hearing upon a supplemental petition. [¶] (a) The supplemental petition shall be filed as follows: [¶] . . . [¶] (2) By the probation officer or the prosecuting attorney, after consulting with the probation officer, if the minor is a court ward or probationer under Section 602 in the original matter and the supplemental petition alleges a violation of a condition of probation not amounting to a crime. The petition shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor. The petition shall be filed by the prosecuting attorney, after consulting with the probation officer, if a minor has been declared a ward or probationer under Section 602 in the original matter and the petition alleges a violation of a condition of probation amounting to a crime. The petition shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor." (Stats.1989, ch. 1117, § 18, p. 4127.)
[9] Between 1961 and 1986, former section 777 permitted a more restrictive placement where any circumstance  new crime, probation violation, or other state of facts  showed that the previous disposition has not been effective in the rehabilitation of the person. (Id., former subd. (a), added by Stats.1961, ch. 1616, § 2, p. 3460; see In re Michael B. (1980) 28 Cal.3d 548, 552-553, 169 Cal.Rptr. 723, 620 P.2d 173.) The quoted phrase remained in the statute when it was otherwise amended in 1986 to cover "[probation] violation[s]" either "amounting to a crime" or not amounting to a crime. (§ 777, former subd. (a)(2), as amended by Stats.1986, ch. 757, § 5, p. 2478.) In addition to the changes we have already described, Proposition 21 deleted language from section 777(a)(2) concerning the "effective[ness]" of the previous disposition with respect to rehabilitation. However, as Proposition 21 voters otherwise made clear, rehabilitation continues to be a core concern of proceedings under section 777, including any new placement ordered thereunder.
[10] Many years have passed since juvenile courts lacked such flexibility under sections 602 and 777. Before current section 202 was enacted in 1984, its predecessors favored juvenile court treatment "in [the person's] own home." (Former § 202, added by Stats.1976, ch. 1068, § 1.5, p. 4741, and repealed by Stats.1984, ch. 756, § 1, p. 2726; former § 502, added by Stats.1961, ch. 1616, § 2, p. 3460, and repealed by Stats.1976, ch. 1068, § 14, p. 4781.) Until this preference was removed from the statutory scheme, persons within the juvenile court's jurisdiction under section 602 received the most lenient disposition initially, and experienced more restrictive placements incrementally, after less restrictive options were tried. (See Arthur N., supra, 16 Cal.3d 226, 237, 127 Cal.Rptr. 641, 545 P.2d 1345, citing In re Aline D. (1975) 14 Cal.3d 557, 564, 121 Cal.Rptr. 816, 536 P.2d 65; In re Donna G. (1970) 6 Cal.App.3d 890, 894, 86 Cal.Rptr. 421 [removal from parental custody is "last resort"].) Hence, under this older, more rigid approach, new placements ordered for section 602 wards and probationers under section 777 were deemed primarily punitive, and were necessarily more restrictive than what could have been ordered earlier in the proceedings. (Eddie M., supra, 31 Cal.4th 480, 507, fn. 16, 3 Cal.Rptr.3d 119, 73 P.3d 1115.)